# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF MISSOURI

| | |
|---|---|
| METROPOLITAN ST. LOUIS EQUAL HOUSING AND OPPORTUNITY COUNCIL,<br>　　　　　　　Plaintiff,<br>　v.<br>CITY OF MAPLEWOOD, MISSOURI,<br>　　　　　　　Defendant. | Civ. Action No. 4:17-cv-886-RLW |

## PLAINTIFF'S MOTION FOR RELIEF FROM JUDGMENT

Plaintiff Metropolitan St. Louis Equal Housing and Opportunity Council ("EHOC") respectfully asks this Court, pursuant to Federal Rules of Civil Procedure 59, 60(b) and 60(c), to grant relief from its final judgment and reconsider its Memorandum and Order dated December 8, 2017 [ECF No. 30], that granted Defendant City of Maplewood, Missouri's ("Maplewood") motion to dismiss (the "Order").

EHOC respectfully submits that this Court overlooked that EHOC's sex discrimination and disability discrimination claims are conceptually distinct from the race discrimination claims, and thus this Court erred in dismissing them for the same reasons. EHOC does not ask this Court to reconsider its decision that the complaint failed to plead race discrimination, but respectfully submits that its other claims require different analysis and further consideration.[1]

First, this Court's reasoning did not warrant dismissal of EHOC's claim that Maplewood's nuisance ordinance has a predictable disparate impact based on sex because the ordinance, on its face, explicitly calls for enforcement based on calls regarding "domestic violence." For this claim, EHOC does not need to allege selective enforcement against women but not men for the same conduct, and so this Court's finding that selective enforcement has not

---

[1] EHOC does not waive its right to pursue those claims and theories not described herein.

been pleaded is irrelevant. Rather, EHOC's facial challenge to the ordinance's "domestic violence" provision requires only allegations plausibly showing that this provision predictably has a disparate impact on women that cannot be justified by legitimate reasons. This Court overlooked that EHOC points to national studies showing that (1) victims of domestic violence are disproportionately women and (2) domestic violence calls make up a significant percentage of police calls and thus predictably generate many nuisance enforcement actions. EHOC was not required to *also* point to statistically robust local data showing disparate impact (though EHOC's findings from its study of the small sample of Maplewood's enforcement actions indicates that Maplewood's ordinance has the expected discriminatory effect). This Court's dismissal of EHOC's sex discrimination claims for failure to point to sufficient indicia of disparate impact caused by Maplewood's ordinance thus was erroneous and should be reconsidered.

Second, EHOC asks this Court to reinstate its disability discrimination claims for similar reasons. EHOC alleges that Maplewood's overbroad definition of nuisance activity—extending to any calls regarding "annoyance" or "inconvenience"—predictably has a disparate impact on people with certain disabilities, who more frequently make calls or are the subject of calls to the police for non-criminal conduct. Like the sex discrimination claim, this one does not require allegations of selective enforcement or localized impact data, and so this Court's reasoning is inapposite. Additionally, EHOC alleges that Maplewood fails to make reasonable accommodations for people with disabilities; this Court overlooked that Maplewood did not even acknowledge that claim, let alone move to dismiss it, and so it should be reinstated.

## ARGUMENT

A. **This Court Overlooked EHOC's Allegations That The "Domestic Violence" Provision Has a Predictable Disparate Impact Based on Sex**

This Court dismissed EHOC's claim that Maplewood's nuisance ordinance discriminates

2

based on sex, reasoning that EHOC had not established selective enforcement against women for conduct that would not lead to enforcement against men. *See* Order at 8. EHOC does not challenge that conclusion on this motion, but respectfully submits that this Court overlooked that EHOC pleaded and argued a conceptually distinct basis for its sex discrimination claim, which another court in this district has recently found pleads a claim. *See Watson v. City of Maplewood, Mo.*, No. 4:17CV1268 JCH, 2017 WL 4758960, at *6 (E.D. Mo. Oct. 20, 2017).

EHOC's sex-discrimination claim is that the ordinance predictably has a disparate impact based on sex because it specifically targets domestic violence incidents as a grounds for enforcement. Put another way, this is a facial challenge to that part of the ordinance, which predictably results in an unlawful disparate impact on women. *See* Complaint ¶¶ 22 (alleging that ordinance "on its face" calls for enforcement against domestic violence victims) ("Compl."); 49 (alleging that Maplewood discriminates on the basis of sex by "specifically targeting survivors of domestic violence for nuisance law enforcement"); EHOC Br. at 10 (describing how text of ordinance makes "virtually inevitable" that sex discrimination will occur); *Charleston Hous. Auth. v. U.S. Dep't of Agric.*, 419 F.3d 729, 740-41 (8th Cir. 2005) (selective enforcement not required to prove such a claim). This Court's decision does not address this theory, and so this Court should reconsider its decision and reinstate EHOC's sex-discrimination claim.

Whereas other municipal nuisance ordinances explicitly exempt domestic violence victims from enforcement, Maplewood's has an explicit carve-*in* for domestic violence incidents. The ordinance classifies as a nuisance—that is, conduct that justifies revocation of one's permit to live in Maplewood—"domestic violence resulting in calls to the police." Compl. ¶ 22; Maplewood Code of Ordinances § 34-240(17)(f) ("Maplewood Code"). In accordance with the ordinance's terms, Maplewood has instituted enforcement proceedings against at least 6 women

3

(but no men) wholly or in part because they were attacked by a male partner, former partner, or rebuffed suitor and made calls (or had calls made on their behalf) to the police as a result. Compl. ¶¶ 29-33. This policy not only disadvantages those women, it also deprives other women of police protection, since seeking assistance can lead to exile. *Id.* ¶ 43; *see also* Amicus Br. for Crime Victim Advocacy Center of St. Louis 3-5, filed in *Watson v. City of Maplewood, Mo.*, No. 4:17-cv-1268 (E.D. Mo., filed July 12, 2017) (explaining how nuisance ordinance discourages women facing domestic violence from seeking police protection).

This policy plausibly amounts to sex discrimination, not because the ordinance is selectively enforced against some domestic violence survivors and not others, but because it predictably impacts women disproportionately and serves no legitimate purpose. *See* Complaint ¶ 44 (alleging that there is no legitimate reason to "punish women for being survivors of domestic violence"). It is common knowledge that women are predominantly the victims of domestic violence, and statistics confirm that reality. *See* Compl. ¶ 49 & n.2; *see also* Department of Housing and Urban Development ("HUD"), Office of General Counsel, *Guidance on Application of Fair Housing Act Standards to the Enforcement of Local Nuisance and Crime-Free Housing Ordinances Against Victims of Domestic Violence, Other Crime Victims, and Others Who Require Policy or Emergency Services* at 4 (2016) ("HUD Guidance"); Bureau of Statistics, Dept. of Justice, Intimate Partner Violence, 1993–2010 1 (2015), http://www.bjs.gov/content/pub/pdf/ipv9310.pdf (recognizing that approximately 85 percent of domestic violence victims are women). Moreover, calls regarding domestic violence are, in many jurisdictions, the largest category of calls that police receive—even though many women who experience such incidents do not call the police. HUD Guidance at 4 & nn. 24, 29.

These disparities are borne out by EHOC's study of Maplewood's ordinance, where 6 of the 43 enforcement actions studied—almost one-seventh—were against women who experienced domestic violence. This Court found this evidence insufficient to make out a claim of disparate impact based on sex. Order at 11. That reasoning misunderstands EHOC's burden.

Evidence that a policy *predictably will result in* a disparate impact on a protected group is sufficient to sustain a disparate impact claim; one need not present statistically robust, local evidence that the predicted result has already borne out with respect to the policy challenged. *See* 24 C.F.R. § 100.500(a) (policy "has a discriminatory effect" under the Fair Housing Act "where it actually *or predictably* results in a disparate impact on a group of persons" based on, *inter alia*, sex) (emphasis added); *Charleston Hous. Auth. v. U.S. Dep't of Agric.*, 419 F.3d 729, 740-41 (8th Cir. 2005) (same); *United States v. City of Black Jack*, 508 F.2d 1179, 1184 (8th Cir. 1974) (same). Reliance on national data to prove the disparate impact of a localized policy is appropriate where, as here, there is "no reason to suppose" that the local effects "differ markedly from those of the national population." *Dothard v. Rawlinson*, 433 U.S. 321, 330 (1977); *see, e.g.*, *Bradley v. Pizzaco of Neb., Inc.*, 939 F.2d 610, 613 (8th Cir. 1991) (burden is on the defendant to show that localized impact does not "mirror" national impact).

Accordingly, relying primarily on the national studies (and HUD Guidance) referenced above, EHOC alleges that a nuisance ordinance that facially (not as a matter of selective enforcement or discretion) singles out police calls about domestic violence for enforcement *predictably* generates a disparate impact on women. This claim does not require a showing of selective enforcement. Nor is it principally based on the documented disparities that Maplewood's ordinance has already created, as appears to be the premise of this Court's reasoning that the local data are insufficiently robust to support the claim. Rather, EHOC points

5

to its study of a necessarily small, local sample merely to confirm that Maplewood's ordinance is having precisely the expected discriminatory impact.[2] This Court overlooked that EHOC sufficiently pleaded allegations based on national data that make out a claim that the domestic violence provision in Maplewood's nuisance ordinance will predictably result in a disparate impact based on sex, which is all that is required.

Courts have recognized that a landlord's eviction of a woman because of a domestic violence incident can be sex discrimination under the Fair Housing Act. *See Bouley v. Young-Sabourin*, 394 F. Supp. 2d 675, 678 (D. Vt. 2005); *see also Dickinson v. Zanesville Metro. Hous. Auth.*, 975 F. Supp. 2d 863, 872 (S.D. Ohio 2013); *Creason v. Singh*, 2013 WL 6185596, at *4 (N.D. Cal. Nov. 26, 2013); *Meister v. Kan. City*, No. 09-2544-EFM, 2011 WL 765887, at *6 (D. Kan. Feb. 25, 2011). It follows that an ordinance *requiring* enforcement against domestic violence survivors who call the police likewise plausibly discriminates based on sex.

Other federal laws also recognize that victims of domestic violence are overwhelmingly women, and so local housing policies that disadvantage and discourage victims from reporting domestic violence incidents (as Maplewood's ordinance does) discriminate against women. For example, federal law prohibits the eviction of certain tenants (in public housing or buildings that receive certain federal housing funds) because they are the victims of the same acts of domestic violence that, under Maplewood's ordinance, subject them to nuisance enforcement. 42 U.S.C. § 14043e-11(b)(1). Recognizing the gendered nature of domestic violence, that law is called the Violence Against *Women* Act (VAWA). *See, e.g.*, Violence Against Women Reauthorization Act of 2013, Pub. L. No. 113-4; Compl. ¶¶ 47-49. Indeed, VAWA characterizes domestic

---

[2] It is thus immaterial to the sex-discrimination claim whether EHOC's sample is large enough by itself, though it may well be. *See McAlester v. United Air Lines, Inc.*, 851 F.2d 1249, 1258 (10th Cir. 1988) (discrimination established based on analysis of 63 employment decisions for company as a whole and 8 decisions for group within company where plaintiff worked).

6

violence as a "gender-motivated" crime. *See United States v. Morrison*, 529 U.S. 598, 614-15 (2000). It was supported by a "voluminous congressional record" detailing the plight of female domestic violence victims and the tendency of state and local authorities to give such women unfair treatment—exactly as Maplewood's ordinance does. *Id.* at 619–20.

For these reasons, HUD, the agency charged with enforcing the Fair Housing Act, has recognized that nuisance ordinances triggered by police calls that do not *exempt* domestic violence victims from generally applicable enforcement can have a severe and unjustifiable disparate impact based on sex. *See* HUD Guidance at 7-9; Compl. ¶¶ 51-53. Maplewood's ordinance goes further, singling out those who make calls regarding domestic violence as proper enforcement *targets* as a matter of policy, not just through individual enforcement decisions.

All of this is to say that the enforcement of Maplewood's ordinance according to its express language inevitably causes severely discriminatory results based on sex, regardless of the intent of the ordinance's drafters and enforcers, even if applied even-handedly. The ordinance requires enforcement actions to be taken against domestic violence victims—the vast majority of whom are women—simply because they have generated two or more calls to the police. It harms not only those women, but also others who are chilled from seeking police assistance. There is a direct and predictable connection between the challenged policy—the classification of two "domestic violence" calls as a nuisance—and the disparate outcomes based on sex that EHOC has documented. And no legitimate reason can justify such a policy that imposes these burdens on vulnerable women simply for seeking help from their government. *See* Compl. ¶ 52; HUD Guidance at 9 (stating that municipality will have "difficult burden" justifying such a policy).

Because "domestic violence" is such a close proxy for sex, this is the very type of disparate impact Fair Housing Act claim the Supreme Court validated in *Texas Department of*

7

*Housing and Community Affairs v. Inclusive Communities*. In that case, the Court explained that local ordinances that have the effect of excluding protected groups from housing without sufficient justification lie at the "heartland of disparate impact liability." 135 S. Ct. 2507, 2522 (2015). It gave the example of a local ordinance restricting rentals to "blood relatives" of current residents—a rule that had an obvious and predictable racial impact where the current resident population was 88 percent white. *Id.* (citing *Greater New Orleans Fair Hous. Action Ctr. v. St. Bernard Parish*, 641 F. Supp. 2d 563 (E.D. La. 2009). The Court thus recognized that an ordinance drawing distinctions that necessarily fall more harshly on one protected group are exactly what FHA disparate-impact claims properly challenge. That is the situation here, where women make up over 80 percent of domestic violence victims and Maplewood's ordinance facially identifies domestic violence calls as warranting nuisance enforcement.

    Accordingly, this Court's other stated rationale for dismissing *all* of EHOC's disparate-impact claims—that EHOC does not "plausibly allege that the ordinance *causes* the disparity," Order at 10—was error with respect to sex discrimination. In language that this Court cited, but is inapposite here, the Supreme Court contrasted the blood relative ordinance with cases in which the causal connection between the policy and the disparate impact is less clear. *See Inclusive Communities*, 135 S. Ct. at 2523. But none of those causation complications are present here with respect to EHOC's sex discrimination claim. EHOC has identified the specific statutory language (the domestic violence provision) at issue, and has alleged with concrete details that the inclusion of this language causes discriminatory effects for women. That is, just as the blood relative requirement "caused" a disparate impact based on race in a city that was 88 percent white, here the "domestic violence" provision "causes" a disparate impact based on gender given that domestic violence victims are over 80 percent women.

8

This Court also pointed to a case decided after briefing on this motion—*TBS Grp., LLC v. City of Zion, Illinois.*, No. 16-cv-5855, 2017 WL 5129008, (N.D. Ill. Nov. 6, 2017)—that is inapposite with respect to EHOC's sex-discrimination claim. *TBS Group* dismissed a challenge to an ordinance providing new regulatory requirements for rental units. It found that such an ordinance did not have a disparate impact based on race simply because African-American residents were more likely to be renters; rather, the complaint needed to—and did not—"lay out the chain of inferences" from regulation of rental properties to impact on black renters. *Id*. at *9. Otherwise, it reasoned, "*every* Zion ordinance that addresses only rental property would be grounds for a disparate impact claim." *Id.* Here, by contrast, no such "chain of inferences" is required. Maplewood's ordinance directly subjects to nuisance enforcement (and potential exile from town) residents who generate police calls based on domestic violence—most of whom, as is predictable, are women. The causal connection between the challenged provision of Maplewood's ordinance and its effect on female residents could not be more direct.

For all these reasons, this Court should reinstate EHOC's claim that Maplewood's ordinance has a disparate impact on women that violates the Fair Housing Act. Because Maplewood's ordinance so predictably and obviously discriminates against women, another court in this district considering a challenge to this same ordinance found (in a decision that was issued after briefing closed in this case) that similar allegations also stated a plausible claim for intentional sex discrimination. *Watson*, 2017 WL 4758960, at *6. It found that plaintiff was "entitled to engage in discovery and present evidence to support her claim that discrimination against women was a motivating factor in Maplewood's decision to enact the Nuisance Policy." *Id.* That decision was correct, in that "[a]dherence to a particular policy or practice" notwithstanding that it creates a foreseeable disparate impact can be "relevant evidence" of

9

unlawful purpose. *See, e.g.*, *Columbus Bd. of Educ. v. Penick*, 443 U.S. 449, 464–65 (1979). This Court should rule likewise and reinstate EHOC's intentional discrimination based on sex claim.[3]

**B. This Court Overlooked Allegations Pleading Discrimination Based on Disability**

This Court similarly overlooked that EHOC pleaded that specific provisions of Maplewood's nuisance ordinance predictably have a disparate impact based on disability, without regard to selective enforcement or local data. It also overlooked that EHOC pleaded that Maplewood fails to make reasonable accommodations for residents with disabilities—a distinct claim that should be reinstated because Maplewood never moved to dismiss it.

*1. Maplewood's Ordinance Has Discriminatory Effects on Residents with Disabilities*

As EHOC argued in its responsive brief, *see* EHOC Br. at 5, 9-10—and Maplewood did not rebut, thus conceding the point—the overbreadth of Maplewood's ordinance inevitably causes adverse effects for residents with certain disabilities that are similar to those experienced by women who are survivors of domestic violence. Maplewood's ordinance does not require criminal activity, but can be triggered by any "peace disturbance or domestic violence resulting in calls to the police." Maplewood Code § 34-240(17)(f). Its overbroad definition of nuisance can include any conduct or condition that causes the public "annoyance" or "inconvenience." Maplewood Code § 34-240(2). This makes it virtually inevitable that—as EHOC has established in fact happens—people who are suicidal and others with disabilities who need assistance (just like women who are survivors of domestic violence) face unjustifiable nuisance enforcement actions solely because they need help. *See* Compl. ¶¶ 22, 24, 28-33, 35-39, 44, 49.

---

[3] By contrast, like this Court, the *Watson* court found no allegation pleaded that Maplewood enforces the nuisance ordinance differently with respect to similarly situated men and women. 2017 WL 4758960, at *6. EHOC does not ask this Court to revisit that determination, but simply to recognize (like the *Watson* court) that EHOC brings a claim under a conceptually distinct theory. Because *Watson* was not brought under the Fair Housing Act, that court had no occasion to apply disparate-impact analysis to Maplewood's ordinance.

10

Residents with certain disabilities are much likelier to require assistance in ways that trigger such a broadly written ordinance in cases that involve no criminal conduct. For example, people with mental illness make (or are the subject of) a disproportionate number of calls for police intervention that do not involve criminal activity. EHOC Br. at 10 & n.7.[4] Use of such calls to trigger nuisance enforcement thus predictably results in a disparate impact on people with certain disabilities. *Cf. Cmty. House, Inc. v. City of Boise*, 490 F.3d 1041, 1051 (9th Cir. 2007) (finding volume of police calls at certain shelters to be poor proxy for criminal activity because "there could have been fewer police calls due to fewer disabled residents at those facilities and therefore less need for emergency medical assistance"). Moreover, it is unlawful disability discrimination for a municipality to effectively bar people with disabilities from housing simply because it does not want to incur the manageable cost of responding to such calls. *See Hovsons, Inc. v. Twp. of Brick*, 89 F.3d 1096, 1105 (3d Cir. 1996) ("The mere fact that the employees and residents of Holiday Village will at times require the assistance of the local police and other emergency services does not rise to the level of imposing a cognizable administrative and financial burden upon the community."); *Oconomowoc Residential Programs v. City of Milwaukee*, 300 F.3d 775, 786 (7th Cir. 2002) (same).

Maplewood's actual enforcement actions against individuals with disabilities confirm that the ordinance has discriminatory effects. In 11 of the 43 enforcement actions studied, Maplewood initiated proceedings because of obvious manifestations of disability, such as when

---

[4] In its response brief, EHOC pointed to a study finding that behaviors from mental illness are a factor in 3 to 7 percent of all law enforcement calls for service. Int'l Ass'n of Chiefs of Police, *Building Safer Communities: Improving Police Response to Persons with Mental Illness, June 2010*, at 6, *available at* http://www.theiacp.org/portals/0/pdfs/ImprovingPoliceResponsetoPersonsWithMentalIllnessSummit.pdf. Maplewood did not challenge the sufficiency of EHOC's pleading and briefing as to this point, and thus waived any such argument, but to the extent this Court nonetheless believes further details are necessary, EHOC is prepared to replead it with additional evidence.

people with mental illness called a suicide hotline, rather than suspected criminal activity. Compl. ¶¶ 34-37. As a result, residents who need official assistance for themselves or others are chilled from seeking it, since they know doing so may lead to punishment. *Id.* ¶¶ 38-39.

EHOC's complaint describes four of these enforcement actions. In one, a suicidal man had his occupancy permit revoked for making too many calls for medical assistance. In another, a resident suffering from depression had his occupancy permit revoked for a "peace disturbance" after his girlfriend called the police to report that he was considering suicide. In a third, Maplewood took enforcement action against a woman suffering from depression and post-traumatic stress disorder after a rape because she had generated too many phone calls—including a call placed by a suicide hotline volunteer concerned for her safety. In the fourth, a family had its occupancy permit revoked because of incidents related to the parents' mental illness—and was deterred from seeking ambulance service as a result. Compl. ¶¶ 36-37, 39.

As with its sex discrimination claim, EHOC does not point to this localized evidence alone to establish that Maplewood's nuisance ordinance has an unlawful disparate impact based on disability. Rather, these enforcement actions confirm what is already evident on the face of the ordinance—just as "domestic violence" is necessarily (and has proven to be) a proxy for "woman," so "annoyance" is a proxy for "person with a disability."

All of this amounts to disability discrimination that is barred by the Fair Housing Act. Law enforcement actions taken because of a person's disability can constitute disability discrimination. *See, e.g.*, *Lewis v. Truitt*, 960 F. Supp. 175, 178 (S.D. Ind. 1997) (disability discrimination where the defendants knew of plaintiff's disability and "arrested him because of legal conduct related to his disability"). And so can enforcement actions that are taken heedless of a person's disability and thus do the person unnecessary harm. *Gorman v. Bartch*, 152 F.3d

12

907, 913 (8th Cir. 1998); *Schorr v. Borough of Lemoyne*, 243 F. Supp. 2d 232, 238 (M.D. Pa. 2003). Both types of disability discrimination are alleged here. EHOC argued this point in its responsive brief, EHOC Br. at 5, 7, but this Court's decision did not address it.

Moreover, the discriminatory harm is felt not only by those who are subjected to enforcement actions, but also by those people with disabilities who—like women who are survivors of domestic violence—may not seek assistance for fear of risking exile. A municipal policy that amounts to failing to provide police protection to people with disabilities potentially constitutes disability discrimination—even if the police protection in question would *only* benefit people with disabilities. *See, e.g.*, *Van Velzor v. City of Burleson*, 43 F. Supp. 3d 746, 757-60 (N.D. Tex. 2014) (ADA claim stated by allegation that municipal police refused to enforce disability parking rules). Maplewood did not address these disability-specific allegations in its motion papers, nor did this Court's opinion touch on them.

Moreover, while Maplewood claims its enforcement actions against all people (presumably including people with disabilities, though it does not mention them specifically) serve the purpose of public safety, it does not claim (and cannot on this motion) that its actions taken against people with disabilities meet the Fair Housing Act's stringent standards for justification on that basis. The Fair Housing Act bars actions that make housing unavailable for people with disabilities, 42 U.S.C. § 3604(f)(1), except with respect to "an individual whose tenancy would constitute a direct threat to the health or safety of other individuals or whose tenancy would result in substantial physical damage to the property of others." 42 U.S.C. § 3604(f)(9). This direct-threat rule is an affirmative defense, not one available on a motion to dismiss. *See Hunt v. Aimco Props., L.P.*, 814 F.3d 1213, 1225 (11th Cir. 2016).[5]

---

[5] Maplewood's repeated enforcement actions against residents with disabilities suggest that city officials at

### 2. *Maplewood Fails to Make Reasonable Accommodations for Known Disabilities*

EHOC also pleaded that Maplewood fails to make reasonable accommodations for residents' known disabilities. Compl. ¶ 76. This claim is conceptually distinct from the claim that Maplewood's enforcement has discriminatory effects or intent; the City is required to make reasonable accommodations for known disabilities even if the ordinance does not otherwise have the effect or intent of discriminating based on disabilities. *See, e.g.*, *Henrietta D. v. Bloomberg*, 331 F.3d 261, 276–77 (2d Cir. 2003) ("[A] claim of discrimination based on a failure reasonably to accommodate is distinct from a claim of discrimination based on disparate impact."); *Wis. Cmty Servs. v. City of Milwaukee*, 465 F.3d 737, 753 (7th Cir. 2006) (same). Maplewood ignored this claim in its opening brief, and did so again in its reply even after EHOC pointed out the omission. *See* EHOC Br. at 5 n.3. EHOC respectfully asks this Court to reinstate this claim because Maplewood never moved to dismiss it.

Maplewood would have no grounds for moving to dismiss this claim, in any event. The Fair Housing Act requires reasonable accommodations for individuals with disabilities to ensure that they have equal housing opportunities. 42 U.S.C. § 3604(f)(3)(B); *Anderson v. City of Blue Ash*, 798 F.3d 338, 361 (6th Cir. 2015) ("Equal use and enjoyment of a dwelling are achieved when an accommodation ameliorates the effects of the disability such that the disabled individual can use and enjoy his or her residence as a non-disabled person could."). In particular, a municipality must offer residents with known disabilities accommodations from the requirements of nuisance abatement ordinances if their disabilities prevent compliance. *See McGary v. City of Portland*, 386 F.3d 1259, 1263-64 (9th Cir. 2004) (City must give resident with disability extra

---

some point (whether in the drafting or when these enforcement actions started) knew and intended that the ordinance would have these continued discriminatory effects based on disability. *See* Compl. ¶¶ 34-39, 74. This Court need not make such a finding, however, to reinstate EHOC's claims of disability discrimination.

time to clean yard before invoking nuisance ordinance). Similarly, police officers must accommodate known disabilities, including mental disabilities. *See Sheehan v. City and Cty. of S.F.*, 743 F.3d 1211, 1233 (9th Cir. 2014) (ADA claim stated by allegation that police officers unnecessarily forced their way into room and escalated confrontation with person they knew to have mental illness), *rev'd on other grounds*, 135 S. Ct. 1765 (2015).[6]

Here, Maplewood's enforcement of its nuisance ordinance to exile from the city people whose disabilities cause them to generate multiple calls for help but have committed no crimes deprives them of equal (indeed, any) enjoyment of their housing. Rather than accommodating obvious manifestations of mental illness, Maplewood punishes people for them. Maplewood states that its ordinance promotes "public, health, safety, and welfare," Maplewood Br. at 12, but does not explain how these purposes are served *at all* by banishing people whose only wrongdoing is calling for help.

## CONCLUSION

For the foregoing reasons, this Court should grant EHOC's motion, reconsider its Order, and modify its judgment to reinstate EHOC's claims to the extent argued herein.

Dated: January 5, 2018

                                               Respectfully submitted,

                                               /s/ Sasha Samberg-Champion
                                               John P. Relman*
                                               Megan Cacace*
                                               Sasha Samberg-Champion*
                                               RELMAN, DANE & COLFAX PLLC
                                               1225 19th Street, NW, Suite 600
                                               Washington, DC 20036
                                               Phone: (202) 728-1888

---

[6] While *Sheehan* was brought under the Americans with Disabilities Act, the reasonable accommodation analysis is the same under the Fair Housing Act. *See Oconomowoc Residential Programs v. City of Milwaukee*, 300 F.3d 775, 783 (7th Cir. 2002) ("The requirements for reasonable accommodation under the ADA are the same as those under the FHAA."); *Giebeler v. M & B Assocs.*, 343 F.3d 1143, 1149 (9th Cir. 2003) (applying interchangeably reasonable accommodation caselaw under FHA, ADA, and Section 504 of the Rehabilitation Act).

Fax:     (202) 728-0848
jrelman@relmanlaw.com
mcacace@relmanlaw.com
ssamberg-champion@relmanlaw.com

/s/ Thomas E. Kennedy, III
Thomas E. Kennedy, III (MO Bar No. 46617)
Sarah Jane Hunt (MO Bar No. 63899)
LAW OFFICES OF THOMAS E.
KENNEDY, III, L.C.
906 Olive St., Suite 200
St. Louis, MO 63101
Phone: (314) 872-9041
Fax:     (314) 872-9043
tkennedy@tkennedylaw.com
sarahjane@tkennedylaw.com

*Attorneys for Plaintiff Metropolitan St. Louis Equal Housing and Opportunity Center*

\* Admitted *pro hac vice*

## **CERTIFICATE OF SERVICE**

The undersigned hereby certifies that a true and correct copy of the foregoing Plaintiff's Motion for Relief from Judgement was served via the Court's electronic notification system upon all counsel of record this 5th day of January, 2018.

/s/ Sasha Samberg-Champion
Sasha Samberg-Champion
